DENNIS WHITE, JR.

*and*

HENRY C. PEARMAN

*co-executors, etc.*

*v.*

WASHINGTON NATIONAL INS. CO. ·

(NO. 13825)

Decided March 27, 1979.

*E. Dennis White, Jr.,* and *Bernard T. Nibert, II,* for appellants.

*Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Norman K. Fenstermaker,* for appellee.

NEELY, JUSTICE:

This appeal arises from an action instituted in the Circuit Court of Cabell County by appellants, co-executors of the estates of Charles M. Arnold and Rachel B. Arnold, against appellee, the Washington National Life Insurance Company, to recover accidental death benefits on insurance policies issued by appellee. By stipulation of the parties, the sole issue submitted to the court below was whether the language of the insurance policy which provided coverage if injury or death resulted from

"... the wrecking or disablement of an aircraft operated by an incorporated common carrier for passenger service in which the insured is traveling as a fare-paying or pass-holding passenger, provided such aircraft is operated by a licensed transport pilot, flying upon a regular passenger route with a definite schedule of departures and arrivals between established and recognized airports. ..."

covered the decedents' deaths caused by the wrecking of a charter flight. The circuit court found that under all the facts and circumstances the policies did not provide coverage. We affirm.

On 14 November 1970, the decedents were killed when an aircraft upon which they were passengers wrecked while approaching the Tri-State Airport near Huntington, West Virginia. The Southern Airways' flight involved had been chartered by Marshall University to transport its football team, its coaching staff, and other passengers from Huntington, West Virginia to Greenville, North Carolina and back. Appellants sought recovery for their decedents' deaths by filing a timely claim with the appellee which claim was denied because, according to appellee, the Southern Airways aircraft involved was not "flying on a regular passenger route with a definite schedule of departures and arrivals between established and recognized airports." It was not disputed that the decedents died as a result of an aircraft wrecking; the aircraft was owned and operated by an incorporated common carrier (Southern Airways) for passenger service; the aircraft was being operated by a licensed transport pilot; the decedents were fare-paying or pass-holding passengers; or, the airports in Huntington, West Virginia and Greenville, North Carolina were established and recognized airports.

Appellants urge us to examine the insurance policy clause in light of the principle that ambiguous clauses in insurance policies must be interpreted against the insurer, a principle not controverted by the appellee insurance company; however, we find that there is no oppor-

tunity for the application of that rule as we will not construe plain and unambiguous language in a contract. *Adkins v. American Casualty Co.*, 145 W.Va. 281, 114 S.E.2d 556 (1960). As we said in *Stone v. National Surety Corporation*, 147 W.Va. 83, 125 S.E.2d 618 (1962):

> This Court has consistently held that the language of an insurance policy contract, like any other contract, must be accorded its plain meaning, and, where plain, the language must be given full effect, no construction or interpretation being permissible. [citations omitted] 147 W. Va. at 85, 125 S.E.2d at 619.

In the case before us, no ambiguity exists and none should be provided by this Court. Appellants urge upon us arguments which at first appear quite reasonable, but which upon close scrutiny must be found to fail. It is not a very difficult task to create ambiguities in written instruments; however, an ambiguity does not arise just because an alternate interpretation can be created by a Herculean straining which renders common words meaningless. In order for appellants to recover their decedents must have been killed as the result of an aircraft wrecking which was "flying upon a regular passenger route with a definite schedule of departures and arrivals." Southern Airways has never flown a regularly scheduled passenger route between Greenville and Huntington. We cannot accept appellants' contention that since other airlines offered regular passenger service which traversed the air space between Greenville and Huntington, the Southern Airways' flight was traveling a regular passenger route. Appellants' argument, if accepted, would render the "regular passenger route" clause meaningless since much air space over the United States is traversed by regular passenger flights. Neither can we accept appellants' contention that by establishing a take-off and landing time that the flight becomes one with a "definite schedule of departures and arrivals." It is clear to us that the policy was intended to cover regularly scheduled commercial passenger flights and "schedule" means more than one isolated

take-off and landing. A prearranged time can be set for any type of plane to take off; however, the contract obviously contemplated a regular route, which among other things would have given routine experience landing and taking off at the airports concerned to the pilots involved and would, therefore, have had some affect upon the risk.

*Affirmed.*